IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Joshua Trae Spivey, )
    Plaintiff, )
     )
v. ) 1:10cv466 (LMB/JFA)
     )
Officer A. Smith, )
    Defendant. )

## MEMORANDUM OPINION

Joshua Trae Spivey, a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth Amendment were violated by defendant Officer A. Smith's use of excessive force and racial slurs.[1] By Order dated June 21, 2010, a Notice of Lawsuit and Request for Waiver of Service of Summons was sent to the defendant, and he was directed to file an answer or other responsive pleading to the complaint. When the notice and waiver were not returned, the Clerk was directed on September 20, 2010 to issue Summons pursuant to Fed. R. Civ. P. 4 through the United States Marshal. On October 15, 2010, defendant filed an answer, a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, and a supporting brief with exhibits. Defendant also filed the Notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) Local Civil Rule 7(K) giving plaintiff the opportunity to file responsive materials,

---

[1] Specifically, plaintiff alleged that while he was handcuffed and being escorted to a building by Officer A. Smith, Smith grabbed plaintiff by the back of the head and repeatedly slammed plaintiff's head and face into a door frame while making racial comments. Compl. at 5. In the complaint, plaintiff alleged that the incident violated his rights under the Eighth and Fourteenth Amendments. Two days later, however, plaintiff addressed a letter to the Court, stating that he wished to amend his prayer for damages and to omit any claim that the Fourteenth Amendment was violated. (Docket # 3).

1

and plaintiff has filed no reply. For the reasons that follow, defendant's motion for summary judgment will be granted, and final judgment will be entered in his favor.

## I. Background

The following material facts are uncontested. On January 27, 2010, defendant Officer Smith saw Spivey arguing with other officers on the yard at Sussex I State Prison ("Sussex I"), because Spivey wanted a commissary order but had been told he had no money in his inmate account to make a purchase. Smith Aff. ¶ 4; Bland Aff. ¶ 4. When Spivey continued to curse staff and refused to return to his housing unit, he was handcuffed. Smith Aff. ¶ 4; Bland Aff. ¶ 4. After both the Captain and the Lieutenant came to talk to Spivey, he still refused to obey their orders to return to his building, and the Captain determined that Spivey would be moved to segregation after returning to his assigned unit to obtain his personal property. Smith Aff. ¶ 4; Bland Aff. ¶ 4. At that point Spivey became combative and pulled away from staff, kicking at them and cursing. Smith Aff. ¶ 4. Defendant Smith, along with Officer Bland, assisted in taking Spivey to the ground and restraining him. Smith Aff. ¶ 4; Bland Aff. ¶ 4. The Captain talked to Spivey again until he calmed down. Smith Aff. ¶ 4.

Spivey was brought to his feet and escorted to his housing unit. On the way, Spivey became combative and was fighting against staff, and he was placed against the fence until he became calm. Smith Aff. ¶ 5. Once inside the housing unit, Spivey again became disruptive, kicking at staff and placing his feet against the door. Smith Aff. ¶ 5; Bland Aff. ¶ 5. Spivey was held against the wall in a standing position until he became cooperative. Smith Aff. ¶ 5; Bland Aff. ¶ 5. Smith then assisted in putting Spivey in the shower, which is considered a secure area. That was the last contact Smith had with Spivey. Smith Aff. ¶ 5. The incident was investigated by the Virginia Department

of Corrections Office of the Inspector General, and the incident report reflects that while in the shower, Spivey stepped through his handcuffs and brought them to the front of his body, where he used the handcuffs to hit himself in the head. Smith Aff. ¶ 6. The investigation deemed Spivey's claim that he was assaulted by Smith unfounded. Smith Aff. ¶ 6. Smith attests that he did not use unnecessary force against Spivey, nor did he attempt to hurt Spivey by slamming his head into a doorway. Smith Aff. ¶ 7. Staff members, including Smith, made no racial or other inappropriate comments to Spivey during the incident. Smith Aff. ¶ 7; Bland Aff. ¶ 5.

The Director of Nursing at Sussex I has submitted an affidavit which reflects that Spivey was seen by the charge nurse in the housing unit the day after the foregoing events took place. Spivey reported that he had been beaten up by officers and had three knots on his head. Spiers Aff. ¶ 5. The nurse noted one knot on the right side of Spivey's scalp, another near the top of one ear, and a third on the left side of his head. On examination, Spivey's pupils were equal and reactive to light, there was no swelling of his eyes or face, and he was able to stick out his tongue, make a smile and a frown, and could distinguish between warm and cold and soft pin points. The nurse noted that Spivey was alert and oriented. Spiers Aff. ¶ 5. The nurse found three red areas on Spivey's forehead without drainage, and Spivey stated, "These ones are OK." The nurse noted some swelling on the palm side of the thumb area of Spivey's left hand, and recommended that he keep the area elevated. Spivey rated his pain at 6 out of 10, and stated that his forehead hurt. Spiers Aff. ¶ 5. Spivey was prescribed Motrin for five days, and skull series x-rays were scheduled to rule out structural abnormalities. Spiers Aff. ¶ 6.

The following day, Spivey was called to the medical department for x-rays, but he refused them. Spiers Aff. ¶ 7. On February 3, 2010, Spivey was seen during doctor's sick call for follow-up.

Spiers Aff. ¶ 8. Spivey was standing up at his cell door and was alert and oriented. The doctor noted that Spivey had refused the skull series x-rays on January 29, and Spivey said that he was OK. At that time the doctor was unable to evaluate Spivey further because security staff was unavailable. Spiers Aff. ¶ 8. However, Spivey was seen by the doctor during sick call on February 10, 2010 to follow up on his complaint of a head injury suffered during an altercation and his refusal of the x-rays. Spiers Aff. ¶ 9. Spivey stated that he thought they were calling him over for "his rib x-rays that happened in November." The doctor deferred examination because Spivey was in segregation after noting that Spivey's speech was clear and his pupillary responses were intact. The doctor indicated that Spivey was asymptomatic, and "reassurance was given." Spiers Aff. ¶ 9. Spivey was not seen again for any complaint regarding the January 27 altercation, and he did not request any additional medical treatment or care relative to the incident. Spiers Aff. ¶ 10.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Summary judgment in favor of defendant Smith on the claim of excessive force is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the amount of force Smith used in restraining plaintiff was reasonable given the circumstances. In determining whether a complaint states an Eighth Amendment claim that defendants used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force

plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition *de minimis* uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

In this case, under the uncontested facts in the record, defendant Smith applied force to Spivey only after Spivey became disruptive and combative. Smith's actions therefore were taken in a "good-faith effort to maintain or restore discipline," rather than "maliciously and sadistically to cause harm." Cf. Hudson, 503 U.S. at 7. Because Smith's actions caused Spivey to suffer only minimal injury, it appears that the amount of force he applied was not excessive. Wilkins, 130 S.Ct. 1178. Defendant thus has met his burden as the party moving for summary judgment to show that he is entitled to judgment as a matter of law on plaintiff's claim. Celotex, 477 U.S. at 322 - 23. Plaintiff has filed nothing in reply, so it is apparent that no disputed issues of material fact require resolution in this action. Anderson, 477 U.S. at 248. Defendant thus is entitled to summary judgment on plaintiff's Eighth Amendment claim of excessive force.

In the complaint, plaintiff included a cursory allegation that Smith made inappropriate racial

comments to him during the incident at issue. Verbal harassment and abuse, without more, does not rise to the level of a constitutional claim under §1983. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). "[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis of a §1983 claim." Keyes v. City of Albany, 594 F.Supp. 1147 (N.D.N.Y. 1984). Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). Here, the uncontested evidence supplied by defendant Smith demonstrates that no racial slurs were uttered while plaintiff was being restrained. Therefore, to the extent that plaintiff's reference to inappropriate racial language might be deemed to allege a cause of action, Smith is entitled to judgment as a matter of law on plaintiff's claim of racial slurs.

Because defendant has established his entitlement to judgment as a matter of law on plaintiff's claims of excessive force and racial slurs, it is unnecessary for the Court to address his position on the question of qualified immunity.

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and summary judgment will be entered in his favor. An appropriate Order and Judgment shall issue.

Entered this 11th day of February 2011.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia